Cite as 2015 Ark. App. 553

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR–15–130

| | |
|---|---|
| ANDRE LAMONT WILLIAMS<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** October 7, 2015<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. CR–2014–457]<br><br>HONORABLE J. MICHAEL FITZHUGH, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Andre Lamont Williams was tried by a jury and was found guilty of felony theft by receiving, felony fraudulent use of a credit card, misdemeanor refusal to submit to arrest, and misdemeanor fleeing apprehension. He now appeals, challenging only the sufficiency of the evidence to support his conviction of fraudulent use of a credit card. He disputes the evidence that the State presented as proof that he purchased items totaling more than $1000 with the victims' credit cards. We affirm.

A person commits the offense of fraudulent use of a credit card if with the purpose to defraud, he or she uses a credit card or credit card account number to obtain property or a service with knowledge that the card or account number is (1) stolen; (2) revoked or cancelled; or (3) forged; or "(4) [f]or any other reason his or her use of the credit card [or] credit card account number . . . is unauthorized by either the issuer or the person to whom

SLIP OPINION

the credit card . . . is issued." Ark. Code Ann. § 5-37-207(a) (Supp. 2013).[1] In general, under this statute, it is the *use* of a stolen, revoked or cancelled, forged, or unauthorized credit card or account number that results in a criminal violation. *See Patterson v. State*, 326 Ark. 1004, 1005, 935 S.W.2d 266, 267 (1996) (holding that subsection (a)(4) is directed at "a person's acts").[2]

When the sufficiency of the evidence is challenged in a criminal conviction, the appellate court views the evidence in a light most favorable to the verdict and considers only the evidence supporting it. *Adkins v. State*, 371 Ark. 159, 264 S.W.3d 523 (2007). The conviction will be affirmed if it is supported by substantial evidence. *Id.* Substantial evidence is evidence of such sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* Circumstantial evidence may constitute substantial evidence to support a conviction. *Thornton v. State*, 2014 Ark. 157, at 5, 433 S.W.3d 216, 219. Circumstantial evidence, in order to be found substantial, must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* Such a determination is a question of fact for the trier of fact, who is free to believe all or part of any witness's testimony and who may resolve issues of conflicting testimony and inconsistent evidence. *Id.*

---

[1]Arkansas Code Annotated section 5-37-207(a) (Supp. 2013) also includes fraudulent use of debit cards.

[2]*Patterson* involved interpretation of a prior version of the statute, Arkansas Code Annotated section 5-37-207 (Repl. 1993), which referred to credit cards but not to debit cards or account numbers. Our supreme court affirmed appellant's conviction, finding sufficient evidence that she had used another person's credit card account number to obtain merchandise without his authorization. *Patterson*, 326 Ark. at 1007, 935 S.W.2d at 268.

SLIP OPINION

The State's witnesses at appellant's trial were Don Sosebee and his wife, Rebecca, who each had a Sears credit card on an account that ended with the digits 7173; Pam Page, Sears's loss-prevention manager; Fort Smith Police Detective Barbara Williams, who investigated the Sosebees' report of a stolen credit card and fraudulent use; and police officers who participated in arresting appellant shortly after Sears alerted police that the man they wanted was in the store, and police observed him on live video shopping. The evidence viewed in the light most favorable to the verdict is as follows.

The Sosebees were billed for transactions at their local Sears store from late 2014 through early 2015 that they had not made. Mr. Sosebee reported his card missing and cancelled it. Ms. Sosebee gave the police information about the account, and the Sosebees told Detective Williams that they suspected appellant and his girlfriend. Appellant had been in Mr. Sosebee's car a number of times, and appellant and his girlfriend had been in the Sosebees' home. The Sosebees had not given the couple the Sears cards or permission to use them.

Detective Williams provided Pam Page with information about transactions on the cards ending with 7173. Ms. Page found the transactions in Sears's local computer system and, by using the name and phone number associated with 7173, discovered a separate card belonging to the Sosebees on a different account. The second account ended with 3158. When appellant was arrested, he was carrying a Sears credit card in Mr. Sosebee's name on account 3158. Although it is standard procedure for Sears to send a replacement card to an account holder after fraudulent activity by someone else, Mr. Sosebee never received one for

7173. Ms. Sosebee knew nothing about the second account.

By using the computer system's transaction numbers, time stamps, and register numbers, Ms. Page was able to find relevant transactions in videos from the store's surveillance footage. She testified at trial that she watched the videos on February 12, 2014, was able to see the person making the transactions on the videos, and was "100 percent sure" that the same person was in each of them. She further testified:

> I recognized [appellant]. I had an interaction with him on another occasion in the store. He claimed someone had taken something out of his shopping cart, and I reviewed the video and spoke to him in person on the sales floor. Yes, a face to face conversation.
>
> Yes, I was able to print out the records. I gave the surveillance footage to Detective Williams along with the transactions. [Appellant] was in the store quite often. Some of the associates would call and say "Hey, the guy is back." We got to calling him the Carhartt guy because he always wore a Carhartt or Arkansas Razorback jacket. He was in the store making large purchases on consecutive days, so that was very odd. He was purchasing fine jewelry items or t.v.'s, electronics, that type of thing. Sometimes twice a day, sometimes . . . consecutive days.
>
> State's Exhibit 4 is the DVD I burned for Detective Williams. It contains all the transactions that were made on these credit cards. . . [and] is an accurate copy of my surveillance footage.

Through Ms. Page's testimony, computer printouts of seven transactions were admitted into evidence as State's Exhibits 5–11. Exhibits 8, 9, and 11 were printouts with a second page showing account 3158. Ms. Page testified that she had researched and determined the account numbers associated with each transaction on the other exhibits missing an account number. She gave specific testimony about the printouts and videos regarding the seven transactions:[3]

---

[3]There is no abstract of the videos themselves, but the abstract contains Ms. Page's testimony about them. The DVD is provided in the addendum.

The credit card on this transaction [shown in Exhibit 5] had the last four digits of 7173. I know that because at the time that I was pulling these I was pulling the credit cards off our journals in the same computer and also the second page in multi-system. No, I couldn't get to that if I didn't know what credit card it was coming from.

. . . .

State's Exhibit 6 is a transaction from January 2, from my children's register. I found it by searching the credit card information. The card used for this transaction, it was the same card 7173. . . . A 32 inch LED t.v. was purchased that day, along with some clothing and some candy. . . . I pulled surveillance footage for that. . . . There were eight items. The account was number 7173 also.

I also pulled transactions for a different credit card. State's Exhibit 7 is a printout from our computer on a transaction at my jewelry counter. That transaction occurred February 4, at 12:26. A necklace was purchased. Yes, I retrieved that record. Yes, there is a second page to that document. It shows that account number 3158 was used on this purchase. It was made under the name Don Sosebee. This one is . . . a video I provided, shot at Sears, at the fine jewelry counter. The defendant is wearing a Carhartt jacket, it is significant because we saw him multiple times in his jacket.

State's Exhibit 8 is a printout of a transaction at Sears. The date of that transaction is also February 4. . . . The second page is different on this printout. It has the account number, the credit card number. The credit card used to make the transaction was 3158. It belongs to Rebecca and Don Sosebee. . . .

I recognize the person in the video. It is [appellant]. State's Exhibit 9 is a printout off our local system computer of the transaction that occurred February 4, the same date as the last two other ones. This one took place at 18:53. A Samsung 43" t.v. was purchased for $438.99. Yes, there is a second page to that document. It shows that account number 3158 was used on this purchase. It was made under the name Don Sosebee. . . . This is in the electronics department. I observed [appellant] making the transaction. He was wearing the Carhartt jacket and made three transactions for the 4th.

State's Exhibit 10 is a printout from our local computer system for a transaction made February 5, 2014 at Sears. It is Trac phones and Trac phone minutes, to the best of my knowledge. This is mobile minutes and Trac phones. $159.10 was spent. Card 3158 was used. . . .

State's Exhibit 11 is a printout from our computer of a transaction at Sears. The transaction shows 7281. The amount spent was $ 570.69. The transaction took place at 16:25 on February 5. Yes, it is the same day as the one we just viewed. A Samsung 51" t.v. and a Boost Mobile Minutes for phone were purchased. Yes, the

record indicates the 3158 card was used. That card belonged to Don Sosebee.

At the conclusion of the State's case, appellant moved for a directed verdict on the charge of fraudulent use of a credit card. He renewed the motion without putting on a case for the defense. Each motion was denied. In his arguments on appeal, he repeats the arguments made to the trial court.

Appellant argues that there was "no documentary evidence attaching [Exhibits 5 and 6,] to the use of Mr. Sosebee's credit card," the video associated with Exhibit 5 showed only the back of a black male with a shaved head, and the video associated with Exhibit 6 showed a male wearing an Oklahoma jacket, which did not corroborate testimony of a male wearing a Razorback or Carhartt jacket. He further argues:

> The . . . transactions associated with Exhibits 5, 6, 7, and 10 have no link to a credit card being used. There is no evidence that the transactions were paid for by a credit card as a form of payment, and certainly not one belonging to the Sosebees. Moreover, the video associated with these transactions likewise does not show a card being presented as a form of payment. Therefore, there was insufficient evidence regarding those transactions to show fraudulent use of a credit card.

> The transactions associated with Exhibits 8, 9 and 11 do purport to have a credit card associated with those transactions, one with a number ending in 3158. This was the card found on appellant at the time of his arrest. However, the only evidence presented linking the use of that credit card, as opposed to possession alone, with appellant is the video evidence presented in State's Exhibit 4.

Appellant points to Pam Page's agreement that the person in the video of Exhibit 11 was barely visible and that Exhibit 8 showed only a bald head at the bottom of the video. He argues that the purchaser is barely visible in Exhibit 9. He acknowledges documentary evidence associating those transactions with a credit card, but he argues that no credible evidence shows that he was the one who used the card.

SLIP OPINION

We find no merit in appellant's arguments.  It was up to the jury to decide the weight and credibility of the evidence to show that the purchases at issue were made on the Sosebees' credit cards and that appellant was the person making each transaction.  Deferring to the jury on these matters, and viewing the evidence in the light most favorable to the verdict, we hold that the evidence is substantial to sustain appellant's conviction for fraudulent use of a credit card.

Affirmed.

KINARD and HIXSON, JJ., agree.

*Lisa-Marie Norris*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson*, Ass't Att'y Gen., for appellee.